IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| HOWARD ACQUISITIONS, LLC | * |
| Plaintiff, | * |
| v. | CIVIL NO.: WDQ-09-2651 |
| GIANNASCA NEW ORLEANS, LLC and CRESCENT CITY ESTATES, LLC, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Howard Acquisitions, LLC ("Howard") sued Giannasca New Orleans, LLC ("GNO") and Crescent City Estates, LLC ("CCE") for breach of contract.  Pending are Intervenor Stuart C. Fisher's motions to dismiss (1) his Complaint-in-Intervention and (2) Howard's counterclaim.  For the following reasons, the motion to dismiss the Complaint-in-Intervention will be granted, and the motion to dismiss the counterclaim will be denied.

1

I.    Background[1]

CCE--a Louisiana LLC--is the sole member of GNO, which was formed in 2005 to buy the Plaza Tower in New Orleans.  Compl. ¶ 8.  In November 2005, after the Tower was damaged by Hurricane Katrina, GNO sold it to Howard Properties, LLC, the predecessor-in-interest to Howard Acquisitions.  *Id*. ¶ 9.  GNO executed a letter agreement to "pay or reimburse [Howard Properties] for all remedial work to restore the [Tower] to its condition as it existed prior to Hurricane Katrina."  *Id*. ¶ 10.  Howard later learned that insurance paid CCE $12,000,000 for damage to the Tower.  *Id*. ¶¶ 27, 29.

On July 25, 2008, Howard sued GNO and CCE in Louisiana state court, alleging that it was entitled to the insurance proceeds under the letter agreement.  Paper No. 1.  On August 1, 2008, the Defendants removed to the Eastern District of Louisiana on the basis of diversity.  *Id*.

On August 5, Fisher moved to intervene.  Paper No. 35.  Fisher alleged that he had acquired the right to buy the Tower in 2003, to convert it to condominiums.  Inter. Compl. ¶ 1.  In 2005, Ed Giannasca and Michael McCrary agreed to invest in

---

[1] For the pending motions, Howard's well-pled allegations are accepted as true.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Fisher's project and created several limited liability companies--including GNO and CCE--for the purchase and development of the Tower. *Id*. ¶¶ 2-6. GNO exercised Fisher's right to buy the Tower in March 2005. *Id*. ¶ 6. In late August 2005, Hurricane Katrina damaged the Tower and made the project infeasible. *Id*. ¶ 18. Fisher, Giannasca and McCrary decided to repair the damage and sell the Tower. *Id*. ¶ 18. Fisher alleges that after Giannasca and McCrary began having financial difficulties, they agreed to convey their interests in CCE and GNO to him for his promise to repair the Tower and indemnify them against future liability from the project. *Id*. ¶¶ 26-31. Fisher alleges that in October 2005 GNO and CCE assigned to him their interests in the project--including ownership of the Tower and any rights to insurance proceeds from the hurricane damage. *Id*. ¶¶ 35, 57.

In November 2005, Fisher, through CCE and GNO, sold the Tower to Howard Properties. *Id*. ¶ 39. Fisher alleges that the insurance claim was "a subject of negotiation at the sale [to Howard Properties]," and that the parties agreed that the insurance claim "would remain with [him]." ¶ 39. Fisher's complaint sought a declaratory judgment of his entitlement to the insurance proceeds. *Id*. ¶ 57. The Eastern District of

3

Louisiana granted Fisher's motion to intervene on August 7, 2009. Paper No. 36.

On September 21, 2009, GNO and CCE--who dispute Fisher's ownership--moved for summary judgment on Fisher's complaint. Paper No. 65. They argued that Fisher's claim to the insurance proceeds was based on his alleged ownership of CCE. *Id*. The Defendants argued that because the United States Bankruptcy Court for the Eastern District of Louisiana had determined in a related proceeding that Fisher did not own CCE, Fisher's claim was barred by *res judicata*. *Id*.

On September 25, 2009, Howard answered Fisher's complaint and counterclaimed against him, alleging that Fisher had wrongfully received the insurance proceeds to which Howard was entitled under the agreement with GNO. Paper No. 68. The case was transferred to this Court on October 7, 2009. Paper Nos. 72, 73.

On November 4, 2009, Fisher moved for voluntary dismissal of his complaint. Paper No. 81. On December 9, 2009, Howard moved to file a surreply to Fisher's motion. Paper No. 90. On January 11, 2010, Fisher moved to dismiss Howard's counterclaim, Paper No. 91; on February 26, 2010, Howard moved to file a surreply to this motion, Paper No. 95.

4

I.   Analysis

    A.  Motion for Voluntary Dismissal

Fisher has moved for voluntary dismissal with prejudice under Fed. R. Civ. P. 41.[2] When the opposing party has answered or moved for summary judgment, voluntary dismissal requires leave of court.  Fed. R. Civ. P. 41(a)(1)-(2).  If the opposing party pled a counterclaim before being served with the motion for voluntary dismissal, "the action may be dismissed over . . . objection only if the counterclaim can remain pending for independent adjudication."  *Id*. 41(a)(2).

Usually, a motion for voluntarily dismissal will not be denied absent "plain legal prejudice" to the defendant.  *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001).  When the moving party seeks dismissal *with prejudice*, "it has been held that the district court must grant that request."  *Weathers v. Consol. Stores Corp.*, 2004 U.S. Dist. LEXIS 202, at *4 (D. Md. Jan. 7, 2004).  "Because a dismissal with prejudice of the main action removes the threat

---

[2] Howard has moved to file a surreply to Fisher's motion. Paper No. 90. "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  D. Md. R. 105.2.a. Surreplies are appropriate when a party would be unable to contest matters presented for the first time in the opposing party's reply. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Fisher first raised arguments about the Court's personal jurisdiction over him in his Reply.  Howard's surreply will be considered.

of subsequent lawsuits on the dismissed claims, any injustice to the [opposing party] is significantly lessened." Id. at *5 (quoting *FDIC v. Becker*, 166 F.R.D. 14, 15 (D. Md. 1996)).

Howard and the Defendants oppose Fisher's motion on grounds of prejudice. Howard argues that allowing Fisher to voluntarily dismiss would risk prolonging the dispute about the insurance proceeds; keeping Fisher in the suit would allow the matter to be settled once and for all. Pl.'s Opp. 4. Howard also contends that Rule 41 prohibits dismissal of its counterclaim against Fisher because it was served on Fisher before he filed his motion. The Defendants oppose Fisher's motion because of the expense they have borne in (1) preparing a motion for summary judgment on his complaint and (2) beginning the process of seeking Rule 11 sanctions against him.[3]

Voluntary dismissal with prejudice operates as "a complete adjudication on the merits of the dismissed claim." *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir. 1991). Any subsequent suit on the same claim between the same

---

[3] On August 7, 2009, the Defendants sent a letter to Fisher's counsel demanding that the complaint be withdrawn under Rule 11 because the matter of Fisher's ownership of CCE and his right to the insurance proceeds had been determined in the Louisiana bankruptcy proceeding. *See* Def. Opp., Ex. 1 (Letter from Douglas J. Moore, Esq. to W. Patrick Klotz, Esq., Aug. 7, 2009). Although Rule 11's 21-day safe harbor period passed without the pleading being withdrawn, the Defendants have not moved for sanctions.

6

parties or their privies would be barred. *See Weathers*, 2004 U.S. Dist. LEXIS 202, at * 5 (*citing In re Tomlin*, 105 F.3d 933, 936-37 (4th Cir. 1997)). Thus, permitting Fisher to dismiss would prevent him from suing Howard or the Defendants for the insurance proceeds; *res judicata* would bar his claim.

Although defending against Fisher's claim in this suit has cost Howard and the Defendants, granting his motion now will spare them further expense and litigation with Fisher.[4] Permitting Fisher to dismiss his suit also accomplishes the result the Defendants sought in their motion for summary judgment and threat of Rule 11 sanctions.

Howard's counterclaim against Fisher--pending, subject to Fisher's motions to dismiss under Rule 12--does not prevent dismissal because it is uncontested that the Court has diversity jurisdiction over it. *See* Fed. R. Civ. P. 41(a)(2). Accordingly, Fisher's motion for voluntary dismissal will be granted.[5]

---

[4] *See id.* at *6 n.2 ("Despite filing a summary judgment motion, the Defendant's interests are well-served by a dismissal with prejudice because an adjudication in favor of the defendants . . . can rise no higher than this.").

[5] Because Fisher's motion will be granted, the Defendants motion for summary judgment against Fisher (Paper No. 65) will be denied as moot.

B.  Motion to Dismiss the Counterclaim

Fisher moves to dismiss Howard's counterclaim on the grounds that the Court lacks personal jurisdiction over him and that Howard fails to state a claim upon which relief can be granted.[6]  In support of his argument for lack of personal jurisdiction, Fisher has submitted a declaration that he: (1) does not live in Maryland or own property here, (2) has no accounts, telephone listings or mailing addresses in the state, and (3) does not transact or solicit business here.  Mot. to Dismiss, Ex. 3.  Howard responded with transcripts from related proceedings and other documents that, it argues, prove a *prima facie* case of personal jurisdiction.  It also argues that the counterclaim alleges sufficient facts to state a claim for unjust enrichment against Fisher.  Howard has requested discovery on the jurisdictional issue if it has not proven a *prima facie* case.

1. Personal Jurisdiction

The party asserting the claim has the burden of proving personal jurisdiction.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  "If the existence of jurisdiction turns on

---

[6] Howard has moved to surreply to Fisher's motion.  Paper No. 95.  It has failed to cite any new arguments or facts in Fisher's reply; Howard's memorandum merely expands upon arguments asserted in its opposition.  The motion to file a surreply will be denied.

8

disputed factual questions, the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to jurisdiction." *Id*. When the Court addresses the question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing . . . in order to survive the jurisdictional challenge." *Id*. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Absent *prima facie* evidence of "general jurisdiction,"[7] the Court must determine whether the Maryland long-arm statute

---

[7] Although Howard has argued that Fisher's contacts subject him to general jurisdiction in Maryland, the evidence cited is insufficient to show "continuous and systematic" contacts with the forum. *See Estate of Stephen Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 517 (D. Md. 2003) (*citing Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 415 (1984)). Howard cites an agreement between Fisher, Giannasca, and Giannasca's wife, Suzanne--the nature of which is unclear--and (2) Fisher's attempts to develop a Ritz-Carlton property in Baltimore in the early 2000s. The evidence of these contacts is passing references in Fisher's testimony in other proceedings. The Court cannot determine the nature or extent of Fisher's contacts with Maryland for the agreement with the Giannascas or the Ritz-Carlton project. Howard has not shown general jurisdiction.

9

authorizes jurisdiction.[8]  *See Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).  If it does, the Court determines whether the exercise of jurisdiction comports with due process under the Fourteenth Amendment.  *Id*.  Because the Maryland long-arm statute is co-extensive with the scope of jurisdiction permitted by the Due Process Clause, the statutory and constitutional inquiries merge.  *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977).  But "analysis under the long-arm statute" is the appropriate first

---

[8] Under Maryland's long-arm statute, the court may exercise personal jurisdiction over a person or his agent who:

   (1) Transacts any business or performs any character of work or service in the State;
   (2) Contracts to supply goods, food, services, or manufactured products in the State;
   (3) Causes tortious injury in the State by an act or omission in the State;
   (4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
   (5) Has an interest in, uses, or possesses real property in the State; or
   (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

step in determining personal jurisdiction.  *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479, 493 n.6 (2006).

      a. Jurisdiction under the Maryland Long-arm Statute

The Maryland long-arm statute limits jurisdiction to claims "aris[ing] from any act enumerated in the statute." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).  A claimant must "identify a specific . . . provision authorizing jurisdiction," *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001), and show that its claim "aris[es] from" the activity specified in that provision.  See Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).  Then, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause."  *Id.*

Howard asserts that Fisher is subject to personal jurisdiction as one who "transacts any business or performs any character of work or service in [Maryland]," Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), and its counterclaim "aris[es] from" Fisher's business transactions here, *id*. § 6-103(a).[9]  A

---

[9] Howard has also cited § 6-103(b)(4), which provides jurisdiction over a person who "causes tortious injury in the State . . . by an act or omission outside the State if he regularly does business [or] engages in any other persistent course of conduct in the State."  This provision is inapplicable because Howard has not sued Fisher in tort; its unjust enrichment claim against Fisher sounds in quasi-contract.  *See*

nonresident who has never entered Maryland has "transacted business" within the meaning of subsection (b)(1) if his "actions culminate in 'purposeful activity' within the State." *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md. App. 559, 634 A.2d 63 (1993); *Prince v. Ilien Adoptions Int'l Ltd*, 806 F. Supp. 1225, 1228 (D. Md. 1992). Although "all elements of a cause of action need not be founded on acts that have taken place in Maryland," the claimant must show "some purposeful act in Maryland in relation to one or more of the elements of [the] cause of action." *Talgen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md. App. 663, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995). Further, subsection (b)(1) confers jurisdiction based on acts within Maryland; it cannot provide jurisdiction based on acts outside the state, even if the effects of those acts are felt within the state.[10]

The counterclaim alleges that Fisher misappropriated and concealed insurance proceeds to which Howard is entitled. Howard argues that Fisher "transact[ed] . . . business" in Maryland by approaching Giannasca and McCrary about the plan to

---

*Onstott v. Certified Capital Corp.*, 950 So.2d 744, 747 (La. App. 2006).

[10] *See Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 370 (D. Md. 1989); *see also Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 911 (D. Md. 2008); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006).

purchase the Tower, knowing that Giannasca was a resident of Maryland and that McCrary had ties to the state. Howard also cites Fisher's allegation that he entered into a contract with Giannasca and McCrary (on whose behalf Giannasca claimed to be acting) under which CCE was assigned to Fisher. Howard alleges that when this contract was formed, CCE's office had been moved from Louisiana to Baltimore.

Howard also cites facts found in McCrary's suit against Fisher in Maryland state court,[11] including: in late October 2005, Giannasca hosted a conference call with Fisher and McCrary from his Baltimore office during which Giannasca and Fisher misrepresented to McCrary that CCE's insurance claims would probably be denied. *See Fisher v. McCrary Crescent City, LLC*, 186 Md. App. 86, 972 A.2d 954, 963 (Md. Ct. Spec. App. 2009).

---

[11] Howard's argument relies heavily on the Maryland Court of Special Appeals decision affirming the Circuit Court's exercise of personal jurisdiction over Fisher. *See Fisher v. McCrary Crescent City, LLC*, 186 Md. App. 86, 972 A.2d 954 (Md. Ct. Spec. App. 2009). *Fisher* was an appeal from a default judgment entered on McCrary's claim against Fisher, Giannasca and others that they had fraudulently concealed the insurance proceeds that should have been paid to CCE. *Id*. at 962. The Circuit Court awarded McCrary more than 30 million dollars. *Id*. at 961. The Court of Special Appeals affirmed the Circuit Court's personal jurisdiction over Fisher and his liability to McCrary, but remanded for a recalculation of the damages. *Id*. at 989. As Fisher notes, the case is irrelevant because (1) Fisher was served with process in that case, and (2) the court was able to rely on the "conspiracy theory" of personal jurisdiction and to attribute Giannasca's acts in Maryland to Fisher. *Id*. at 967-68. Neither factor is present here.

13

Howard's argument as to how its counterclaim "arises from" these alleged transactions involves a complex--and somewhat unclear--chain of reasoning. Howard appears to argue that as a result of Fisher's solicitation of Giannasca (a Maryland resident) and McCrary (who had ties to Maryland), an agreement was formed to purchase the Tower; to facilitate the purchase, numerous LLCs--including CCE--were formed; after Hurricane Katrina damaged the Tower, insurance proceeds were paid to CCE; Fisher and Giannasca concealed the proceeds from McCrary in part by lying to him during a conference call "hosted" by Giannasca in Baltimore; McCrary and Giannasca assigned CCE--whose office Giannasca had moved to Baltimore--to Fisher; Fisher's subsequent acquisition of the insurance proceeds was apparently made possible by his assuming control of CCE. Thus, Howard argues, as a result of Fisher's business transactions in Maryland--*i.e.*, the initial solicitation of Giannasca and the later conference call--Fisher misappropriated insurance proceeds from CCE. Apparently because Howard claims entitlement to the proceeds under a contract with GNO, whose sole member is CCE, Fisher's misappropriation resulted in his "unjust enrichment" at Howard's expense.

Even assuming the truth of Howard's proffer and drawing all reasonable inferences in its favor, the connection of its claim

14

to Maryland is at best tenuous. Howard cites three contacts with Maryland: (1) Fisher's solicitation of Giannasca and McCrary, (2) the October 2005 conference call, and (3) Fisher's attempted acquisition of CCE, whose office had been moved to Baltimore sometime after the hurricane.

Although it appears that Giannasca was a resident of Maryland when Fisher approached him about the Tower project,[12] the negotiations between Fisher, McCrary and Giannasca appear to have taken place in Louisiana, and the sale of the Tower took place in Texas.[13] There is no evidence that Fisher contacted Giannasca in Maryland or that Giannasca took any action related to the agreement in the state. It also appears that McCrary was living in Arizona when the agreement was formed.[14]

The only evidence about the October 2005 conference call is that it was "hosted" by Giannasca in Baltimore; it is unclear who initiated the call and where Fisher and McCrary were during the call. As for Fisher's attempted acquisition of CCE, although the Eastern District of Louisiana stated that CCE's office was moved to Baltimore sometime after the hurricane,[15] it

---

[12] See Pl.'s Opp., Ex. A; Fisher, 972 A.2d at 967.

[13] See Pl.'s Opp., Ex. A.

[14] See Fisher Mot. to Dismiss, Ex. 1.

[15] See Pl.'s Opp., Ex. E.

is unclear (1) whether the move was before Fisher's attempted acquisition, (2) where the alleged agreement to assign CCE to Fisher was made, and (3) whether Fisher participated in the decision to move the office.

Moreover, Howard merely asserts that Fisher's activities gave rise to its counterclaim; it does not state how.  Howard alleges that Fisher misappropriated the insurance proceeds from CCE, and was "unjustly enriched" at Howard's expense.  To prove unjust enrichment under Louisiana law,[16] Howard must show: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other remedy at law.  *La. Workers' Comp. Corp. v. The Hartford*, 616 F. Supp. 2d 608, 610 (M.D. La. 2008).  Howard has not shown a "purposeful act in Maryland in relation to one or more of the elements of [the] cause of action."  *Talgen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md. App. 663, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995).

---

[16] When, as here, a diversity case has been transferred under 28 U.S.C. 1404, the transferee court applies the law that the transferor court would have applied.  *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Because under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), the Eastern District of Louisiana would have applied Louisiana substantive law to Howard's counterclaim, Louisiana law will apply in this Court.

Howard's showing is insufficient to establish that Fisher's "actions culminate[d] in purposeful activity" in Maryland and that its counterclaim arises out of that activity. Thus, the Court cannot exercise jurisdiction under subsection (b)(1) of the long-arm statute.

   b. Due Process

Nor has Howard made a *prima facie* showing on the due process prong of personal jurisdiction, which requires consideration of "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 406 (D. Md. 2004). "A defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been directed at the forum state in more than a random, fortuitous, or attenuated way." *Id*.

Howard has offered evidence of an agreement to form Louisiana entities to buy a Louisiana property. The negotiations appear to have taken place in Louisiana; the sale, in Texas. The only connection to Maryland appears to be that one

17

of the parties to the agreement, Giannasca, was a Maryland resident, who once hosted a conference call with the other parties, and apparently moved CCE's office to Baltimore after the hurricane.  Based on Howard's evidence, the only activity by Fisher that could arguably be considered "purposeful avail[ment] of the privilege of conducting activities in [Maryland]" is the initial solicitation of Giannasca.  But it is unclear whether the contact with Giannasca was made in Maryland and whether Giannasca took any action in the state as a result of that contact.  Moreover, the relationship of Howard's claims to this initial contact is too attenuated for the exercise of jurisdiction over Fisher to be consistent with due process.

Howard has thus failed to make a *prima facie* showing of personal jurisdiction over Fisher.

### c. Discovery

A plaintiff faced with a motion to dismiss for lack of personal jurisdiction may be entitled to "limited discovery . . . to explore jurisdictional facts."  See *Mylan Labs. Inc., v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (*citing McLaughlin v. McPhail*, 707 F.2d 800, 806-07 (4th Cir. 1983)).[17]  Discovery is warranted in this case because of the unusual procedural history

---

[17] See also *Second Amendment Found. V. U.S. Conf. of Mayors*, 274 F.3d 521, 525 (D.C. Cir. 2001); *United States v. Swiss Bank, Ltd.*, 274 F.3d 610, 637 (1st Cir. 2001).

that has brought Howard and Fisher to a forum that neither of them chose. Howard brought its compulsory counterclaim against Fisher in the Eastern District of Louisiana, where most of the events giving rise to this dispute allegedly took place, and where there would have been personal jurisdiction over Fisher (who waived any objection to jurisdiction by intervening in the suit). Over Howard's and Fisher's objections, the case was transferred to this Court, and has left Howard in the awkward position of trying to establish personal jurisdiction over a defendant it did not sue here.

Although Howard has not been able to make a *prima facie* showing of jurisdiction over Fisher, its claim does not appear to be frivolous. *See United States v. Swiss Bank, Ltd.*, 274 F.3d 610, 637 (1st Cir. 2001) (jurisdictional discovery appropriate when claim is "not frivolous"). Further, Fisher has not objected to Howard's request. Accordingly, the Court will deny Fisher's motion to dismiss to permit limited discovery of jurisdictional facts. The denial will be without prejudice.

Because the Court has not determined whether it has personal jurisdiction over Fisher, it cannot consider his motion to dismiss for failure to state a claim upon which relief can be granted. *See, e.g.*, *Philips v. Mathews*, 1977 U.S. App. LEXIS 13456, at *2 (*citing Arrowsmith v. United Press Int'l*, 320 F.2d

19

219, 221 (2d Cir. 1963)(Friendly, J.)); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2004). The denial of that motion will also be without prejudice.

II. Conclusion

For the reasons stated above, Fisher's motion for voluntary dismissal will be granted, and his motion to dismiss under 12(b)(2) and 12(b)(6) will be denied. CCE and GNO's motion for summary judgment will be denied. Howard's motion to file a surreply to Fisher's motion for voluntary dismissal will be granted, and its motion to file a surreply to Fisher's 12(b) motion will be denied.


March 4, 2010                              _____/s/_____
Date                                       William D. Quarles, Jr.
                                           United States District Judge