IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| HOWARD ACQUISITIONS, LLC | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-09-2651 |
| GIANNASCA NEW ORLEANS, LLC and CRESCENT CITY ESTATES, LLC, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Howard Acquisitions, LLC sued Giannasca New Orleans, LLC ("GNO") and Crescent City Estates, LLC ("CCE") for breach of contract. For the following reasons, Howard Acquisitions' motion for partial summary judgment will be granted, and its motion for leave to file a surreply will be denied as moot. CCE's motion for summary judgment and the Defendants' motion to strike will be denied.

I. Background[1]

CCE and GNO are Louisiana LLCs. Notice of Removal ¶ 8. CCE is the sole member of GNO. Def.'s Resp. To Pl.'s Req. Admis. No. 1. Edward Giannasca, II was a member of CCE and its

---

[1] On summary judgment, the non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

manager. Michael McCrary Aff. ¶ 6 Sept. 18, 2007. In March 2005, GNO bought the Plaza Tower, an office building in New Orleans. Conway Aff. ¶ 5. In November 2005, after Hurricane Katrina, GNO sold the Tower to Howard Properties, LLC. *Id*. Howard Properties obtained financing through Plainfield Direct. Conway Aff ¶ 6. [2]

GNO, Howard Properties, and Plainfield Direct negotiated the terms of sale. Def.'s Mot. Summ. J. 2. Because Plainfield Direct and Howard Properties were concerned about the post-Katrina state of the Tower, GNO executed a November 8, 2005 Letter Agreement to "pay or reimburse [Howard Properties] for all remedial work to restore the Property to its condition as it existed prior to Hurricane Katrina." Conway Aff. Apr. 26, 2010, Ex. 1.[3]

To secure its indebtedness to Plainfield Direct, Howard Properties executed a Mortgage, Assignment of Rents and Leases and Security Agreement with Plainfield on November 8, 2005 (the "Security Agreement"). The Security Agreement gave Plainfield

---

[2] Plainfield Direct operated as Plainfield Special Situations Master Fund Limited when Howard Properties bought the Tower. They later became Plainfield Direct, Inc., a Delaware corporation. Conway Aff. ¶ 9 Apr. 26, 2010.

[3] When Hurricane Katrina struck New Orleans, CCE had insured the Tower for $30 million through Lexington Insurance Company and One Beacon Insurance Company. Michael McCray Aff. ¶ 14 Sept. 18, 2007. Following Katrina, CCE filed insurance claims with Lexington and One Beacon, and recovered $12 million. McCray Aff. ¶ 15; McCrary Dep. 71:8-12.

2

Direct a security interest in "accounts receivable, contract rights, general intangibles . . . and any other rights to the payment of money . . . arising from or related to [the Plaza Tower]." Conway Aff., Ex. 4 at § 4.1. Howard Properties also executed a loan agreement, note, and perfection documents (collectively the "Loan Documents").

In spring 2007, Howard Properties defaulted on the Plainfield Direct loan. Plainfield Direct sued Howard Properties in Louisiana state court in May 2007, and obtained Consent Judgment which provided:

> [Howard Properties] remains in default under the Loan Documents for failure to make payments due . . . [Plainfield Direct] is authorized to fully enforce its mortgage, liens, security interests, security rights and/or other rights and/or interests in the Mortgaged Property pursuant to the Loan Documents to satisfy or partially satisfy this Consent Judgment.

Conway Aff., Ex. 7.

In July 2007, Howard Acquisitions paid Plainfield Direct $27,630,221.02. *Id.*, Ex. 8. In exchange, Plainfield Direct assigned Howard Acquisitions the Loan Documents--- which included the Security Agreement--- and Consent Judgment, together with any "other liens, privileges, security interests, rights . . . [or] claims . . . to which [Plainfield Direct] is otherwise entitled." *Id.*

Howard Acquisitions foreclosed on the Plaza Tower to partially satisfy the amounts owed by Howard Properties. Pl.'s

3

Mot. Partial Summ. J. 7. Howard Acquisitions bought the Plaza Tower at judicial sale on July 26, 2007 for $583,000. Conway Aff., Ex. 10. Howard Acquisitions owns the Plaza Tower, and Howard Properties has not satisfied the Consent Judgment. Pl.'s Mot. Partial Summ. J. 8.

On July 25, 2008 Howard Acquisitions sued GNO and CCE in Louisiana state court, alleging that GNO never fulfilled its obligation under the Letter Agreement. Paper No. 1. The case was removed to this court on August 1, 2008. *Id.*

II. Analysis

   A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003)(quoting *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993)).

B. Howard Acquisitions' Motion for Partial Summary Judgment

Howard Acquisitions seeks summary judgment that it "holds a security interest in the Letter Agreement and the rights and remedies thereunder, and is the proper party to enforce the obligations of the Defendants under the Letter Agreement." Pl.'s Mot. Partial Summ. J. 2. GNO and CCE object to the evidentiary sufficiency of several Howard Acquisition exhibits. Defs. Opp'n Mot. Partial Summ. J. 2.[4] They also assert that there is an issue of material fact whether the Letter Agreement

---

[4] The Defendants have embedded this objection in their opposition to Howard Acquisitions' motion for partial summary judgment. Paper No. 118. They seek to strike the exhibits under Fed. R. Civ. Proc. 56(e)(1), which does not address motions to strike. Rather, it requires a summary judgment motion to be supported by admissible evidence. The Defendants' challenge to the evidentiary sufficiency of several Howard Acquisitions exhibits will be treated as an objection to their admissibility. *Smith v. Computer Task Grp., Inc.,* 568 F. Supp. 2d 603, 610 (M.D.N.C. 2008).

was part of the security Howard Acquisitions bought from Plainfield Direct.  *Id.* 6.

    1. Evidentiary Objections

Affidavits supporting summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techns. Applications & Serv., Co.,* 80 F.3d 954,962 (4th Cir. Md. 1996).  Fed. Rule. Civ. Pro. 56(e) requires that affidavits be based on personal knowledge and that evidence be properly authenticated.[5]  *Cotton v. Town of Seven Devils,* 30 Fed. Appx. 230, 234 (4th Cir. 2002); *Orsi v. Kirwood,* 999 F.2d 86, 92 (4th Cir. 1993) (unauthenticated documents may not be considered for summary judgment).

    a. The Conway Affidavit

James Conway is a partner at Lemle & Kelleher, LLC, counsel for Howard Acquisitions.  Conway Aff. ¶ 1.  CCE and GNO assert that his affidavit must be stricken because: (1) it was not given under penalty of perjury, and (2) Conway did not have personal knowledge of some events he testified about.  Defs. Opp'n Mot. Partial Summ. J. 3.

A *sworn* affidavit need not state that is was given under penalties of perjury to be admissible on summary judgment; that is only a requirement for unsworn declarations.  *See Jarvis v. Enterprise Fleet Services and Leasing Co.,* No. 07-3385, 2010 WL

1068146, at * 15 (D. Md. Mar. 17, 2010). The Conway affidavit was given after he was "duly sworn." Conway Aff. 1. It is not inadmissible because it fails to state that it was given "under penalties of perjury."

GNO and CCE also argue that portions of the Conway Affidavit referring to the Letter Agreement are inadmissible because Conway was not involved in negotiating the Agreement. Defs. Opp'n Mot. Partial Summ. J. 9. Rule 56(e) requires that an affidavit be based on the affiant's personal knowledge. *Cotton,* 30 Fed. Appx. at 234. The affiant's personal knowledge may be based on review of files, if the testimony states facts reflected by the files and does not give "inferences, opinions and surmises."[6]

Conway's knowledge of the Letter Agreement appears to be based on his review of it.[7] Conway has not given inferences or

---

[6] *Lee v. N.F. Invests., Inc.,* No. 99-CV-426, 2000 WL 33949850, at *5 (E.D. Mo. Mar. 15, 2000)(testimony regarding plaintiff's loan file, based on review of the file, was "within [the affiant's] personal knowledge as the Chief Financial Officer of the [defendant] mortgage lender."). *Lockheed Martin Corp. v. United States,* 70 Fed. Cl. 745, 754 (2006)(the personal knowledge requirement of Rule 56 "does not require that the affiant be personally involved in all matters at issue, but can include information obtained from a review of business records"). However, an affidavit is of "questionable value" when the affiant's knowledge is based on review of files and the affiant gives legal conclusions. *Sutton v. Roth LLC,* 361 Fed. Appx. 543, 550 n.7 (4th Cir. 2010).

[7] Conway's affidavit states that he "is familiar with the documents and transactions described in the pleadings," and "has

7

opinions based on that review. Rather, he merely states the facts reflected by the document: GNO executed a letter agreement in favor of Howard Properties, agreeing to pay for work to restore the Tower to its pre-Katrina state. Conway Aff. ¶ 5. These facts are within his personal knowledge. *See N.F. Invests., Inc.,* 2000 WL 33949850 at *5. His affidavit is admissible.[8]

### b. The McCrary Affidavit

Michael McCrary is a member of CCE. McCrary Aff. ¶ 3. GNO and CCE argue that portions of his affidavit should be stricken because they are based on his beliefs about the actions of others, not his personal knowledge. Def. Opp'n Mot. Partial Summ. J. 3. McCrary's statements made "upon information and belief" are inadmissible and will not be considered.[9] *See*

---

personal knowledge of the matters stated herein." Conway Aff. ¶¶ 1,2.

[8] GNO and CCE also argue that the Letter Agreement itself must be stricken because it could not be sworn or certified by Conway, as required by Rule 56(e)(1). Defs. Opp'n Mot. Partial Summ. J. 4. The Defendants previously stipulated to the authenticity of the Letter Agreement during the deposition of Michael McCrary, their 30(b)(6) designee. Michael McCrary Dep. 83:14-18, Feb. 2, 2010. The Letter Agreement will not be stricken.

[9] The following portions of the affidavit will not be considered: (1) Paragraph 41, (2) the following from Paragraph 4, "On information and belief, Giannasca, Giannasca's former wife, Suzanne Giannasca and Stuart C. Fisher were and continue to be the beneficial owners of Giannasca Crescent, and (3) the following from Paragraph 39, "Upon information and belief, the $7,000,000 check, like the $2,000,000 was delivered to Agid, an agent of Crescent City, and acting on instructions from

8

*Ambling Mgmt. Co., v. Univ. View Partners, LLC,* 581 F. Supp. 2d 706, 720 (D. Md. 2008).

### c. The Fritsch Affidavit

The Defendants argue that the Fritsch Affidavit is inadmissible because it is not based on personal knowledge.[10] Thomas Fritsch is the Secretary and Treasurer of Howard Acquisitions. Thomas Fritsch Aff. 1, May 26, 2010. He was General Counsel of Plainfield Direct and participated in Howard Properties' purchase of the Tower from GNO. *Id.* 1, 7. His affidavit states the basis of his personal knowledge and is admissible.

### 2. Howard Acquisitions' Enforcement Rights

Under Louisiana law,[11] a secured creditor, upon the debtor's default, "may enforce the obligations of an account debtor or any other person" who is obligated on the collateral to recover payment of a debt. *See* La. Rev. Stat. § 10:9-607(a)(1). This

---

Giannasca and/or Fisher, Agid delivered the check to Fisher. Fisher made a forged and/or unauthorized endorsement on the check, and on March 27, 2005, he deposited the $7 Million Insurance Payment into the BofA Account."

[10] Defs.' Mot. Strike 1. This motion will be treated as an objection to the admissibility of evidence.

[11] When a federal court exercises its diversity jurisdiction, it applies the substantive law of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). In Maryland "[i]t is now generally accepted that the parties to a contract may agree as to the law which will govern their transaction." *Kronovet v. Lipchin,* 288 Md. 30, 43 (1980). Here, the Security Agreement is governed by Louisiana law. Conway Aff., Ex. 4 at § 8.9.

"permits a secured party to collect and enforce obligations [of a third party] *included in the collateral*." *Id.* cmt. 6 (emphasis added).

When Howard Acquisitions bought the Security Agreement from Plainfield Direct, Plainfield Direct assigned Howard Acquisitions "any and all privileges, security interests, rights, entitlements . . . [or] claims" to which Plainfield Direct was entitled "under the [Security Agreement]." Conway Aff., Ex. 8. Thus, to establish that it is the correct party to enforce any rights against GNO and CCE in the Letter Agreement, Howard Acquisitions must show that those rights were *included in the collateral* described by the Security Agreement it purchased. *Id.* The Security Agreement stated:

> [Howard Properties] grants and assigns to [Plainfield Direct] a security interest to secure payment and performance of all the Secured Obligations, in all the following described personal property in which [Howard Properties] now or at any time hereafter has any interest: All . . . accounts receivable**,** *contract rights*, general intangibles . . . and *any other rights to the payment of money* . . . arising from or related to [the Plaza Tower].

Conway Aff., Ex. 4 at § 4.1 (emphasis added).

The Security Agreement plainly provided that all contract or other rights to the payment of money, which related to the Plaza Tower, were included in the collateral securing Plainfield Direct's loan.[12] The Letter Agreement, which "evidence[d]

---

[12] *Woolf & Magee v. Hughes*, 666 So.2d 1128,1131 (La. App. 1995)(courts must give effect to terms of a contract "expressed

10

[GNO's] agreement to pay or reimburse [Howard Properties] for all remedial work to restore [the Tower]," reflects a contract or other right to the payment of money, which is related to the Tower. Conway Aff., Ex. 1. The rights in the Letter Agreement were included in the collateral underlying Plainfield Direct's loan.[13]

Accordingly, Howard Acquisitions may enforce any rights in the Letter Agreement.[14] Howard Acquisitions' motion for partial summary judgment will be granted.

C. Crescent City Estate's Motion for Summary Judgment

CCE seeks summary judgment because: (1) Howard Acquisitions has not presented evidence from which a reasonable jury could find that CCE is liable for GNO's obligations, and (2) Howard Acquisitions has produced no evidence establishing that GNO was obligated to satisfy the Letter Agreement with the insurance proceeds. Def.'s Mot. Summ. J. 2, 4.

---

with sufficient clearness to convey the plain meaning of the parties").

[13] *Agricredit Acceptance Co. v. Singleton,* 767 So.2d 137, 139 (La. App. 2000)("For purposes of secured transactions law, any description of [collateral] is sufficient whether or not it is specific if it reasonably identifies what is described.").

[14] *Caro Props., LLC v. City of Gretna*, 3 So.3d 29, 33(La. App. 2008)("All rights may be assigned, with the exception of those pertaining to obligations that are 'strictly personal.').

1. CCE's Liability

Under Louisiana law,[15] the "single business enterprise doctrine" is a "vehicle for holding a group of affiliated entities responsible for the obligations of one of the entities." *Sarpy v. ESAD, Inc.,* 968 So.3d 736, 738 (La. App. 2007). The doctrine provides that when entities "integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Brown v. ANA Ins. Grp.,* 994 So.2d 1265, 1261 n.2 (La. 2008). Proof of fraud is not required. *Wooley v. Lucksinger,* 14 So.3d 311, 393 (La. App. 2008).

Several non-exclusive factors, none dispositive, are used to determine when business entities are a "single enterprise." *See Dishon v. Ponthie,* 918 So.2d 1132, 1135-36 (La. App. 2005). The factors include: (1) identity or substantial identity of ownership, (2) common directors or officers, (3) unified administrative control, (4) inadequate capitalization, (5) common offices and employees, (6) centralized accounting, and (7) excessive fragmentation of the business. *Id.*

---

[15] CCE and GNO are Louisiana LLCs and the contract underlying this dispute involves real property located in the state of Louisiana. Accordingly, "Maryland choice-of-law points toward [Louisiana] law." *Meisel v. Ustaoglu,* No. 98-3863, 2000 WL 33374486, *4 (D.Md. Mar. 31, 2000); Nat'l Glass, Inc. v. J.C. Penney Props., Inc., 336 Md. 606, 650, 612 (1994)(contracts related to real property are governed by the state where the property is located).

Here, Howard Acquisitions has provided evidence that: (1) CCE was the sole owner of GNO, Def.'s Resp. To Pl.'s Req. Admis. No. 1, (2) the financial records of both entities were maintained by Giannasca Development Group, and neither entity ever maintained its own independent records, *id.* No. 7; (3) Edward Giannasca, II was the manager of CCE and GNO during the sale of the Plaza Tower, Defs.' Resp. Pl.'s Interrog. No. 4; (4) Giannasca conducted business related to the sale of the Plaza Tower, Michael McCrary Dep. 87:3-11; (5) when GNO sold the Tower to Howard Properties the proceeds went to CCE, *id. at* 54:3-11; and (6) GNO had no employees and did not conduct any operations other than holding ownership of the Plaza Tower. James Walsh Dep. 18: 7-13, Mar. 22, 2010. From this evidence, a reasonable jury may conclude that CCE and GNO are a "single business enterprise."[16]

### 2. Rights to Insurance Proceeds

Summary judgment is only appropriate when there is no genuine issue of *material* fact, and the moving party is entitled to judgment as a matter of law. An issue is "material" if, under

---

[16] *See Dishon v. Ponthie,* 918 So.2d 1132, 1136 (La. App. 2005)(single business enterprise doctrine applied when one entity only existed to construct buildings for the other and single individual controlled both entities); *Green v. Champion Ins. Co.,* 577 So.2d 249, 258 (La. App. 1991)(corporations were single business enterprise when two individuals dominated the affairs of both entities and entities were financed primarily through intercompany debt).

the applicable substantive law, it may affect the outcome of the case. *Drewitt v. Pratt,* 999 F.2d 774, 778 (4th Cir. 1993).

Here, Howard Acquisitions asserts that Howard Properties and GNO entered into an agreement requiring GNO to pay the costs of restoring the Tower to its pre-Katrina condition. Pl.'s Opp'n Def.'s Mot. Summ. J. 3. Although Howard Acquisitions has provided evidence suggesting that the parties considered insurance proceeds as a potential source for fulfilling GNO's obligation,[17] Howard Acquisitions does not assert that the Letter Agreement was an assignment of insurance proceeds. Whether the insurance proceeds were in the contemplation of the parties is not material to Howard Acquisitions' claim for breach of contract, thus, summary judgment on this basis is not appropriate.[18] Accordingly, CCE's motion for summary judgment will be denied.

III. Conclusion

For the reasons stated above, Howard Acquisitions' motion for partial summary judgment will be granted, and CCE's motion

---

[17] Joseph Bencivenga Dep. 118:19-120:17, Mar. 22, 2010; Thomas Fritch Dep. 35:24-37:5, Mar. 24, 2010.

[18] *See Worley v. Changler*, 7 So.3d 38, (La. App. 2009)(The four elements of a valid contract are: (1) the parties must possess capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose."); *Ailstock v. Hamiter,* 420 So.2d 500, 502 (La. App. 1982) (contract that did not specify terms of payment was not void for lack of specificity).

for summary judgment and the Defendants' motion to strike will be denied.[19]

September 27,2010          _____/s/_____
Date                       William D. Quarles, Jr.
                           United States District Judge

---

[19] Because CCE's motion for summary judgment will be denied it is unnecessary for this Court to consider Howard Acquisitions' motion for leave to file a surreply. Paper No. 124. That motion will be denied as moot.